Timothy AGUNBIADE, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 95–CV–0422 (JRB).

United States District Court, E.D. New York.

June 12, 1995.

Timothy Agunbiade, pro se.

Lawrence D. Gerzog, Asst. U.S. Atty., U.S. Attorney's Office, E.D.N.Y., Brooklyn, NY, for respondent.

### MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

Timothy Agunbiade petitions this Court under 28 U.S.C. § 1361 for a writ of mandamus compelling the United States Attorney's Office for the Eastern District of New York and the United States Department of Justice to investigate charges of criminal activity allegedly engaged in by an Assistant United States Attorney and several law enforcement officials. For the reasons set forth below, the petition is denied.

### BACKGROUND

On October 10, 1991, following a one-week jury trial, Timothy Agunbiade was found guilty of conspiring to possess with intent to distribute heroin in violation of 21 U.S.C. § 846. On September 25, 1992, this Court sentenced Agunbiade to 292 months' imprisonment and four years' supervised release.

Petitioner challenged both his conviction and sentence before the Second Circuit Court of Appeals, asserting prosecutorial misconduct, constitutional violations, and judicial error. In a decision dated April 22, 1993, the Court of Appeals affirmed Agunbiade's conviction and sentence. Petitioner also has filed at least eight independent post-trial motions collaterally attacking both his conviction and sentence, each of which has been denied.[1]

The present petition charges Assistant United States Attorney Lawrence Gerzog and several other law enforcement officials with misconduct during the prosecution of petitioner's case. Specifically, Agunbiade claims that during a May 16, 1991 post-arrest search of his residence (apparently conducted only days before trial was scheduled to commence), agents of the Drug Enforcement Administration (DEA) in Detroit, Michigan seized and proceeded to read the contents of a legal file containing notes outlining petitioner's trial strategy. Agunbiade contends that DEA agents, after locating the file in petitioner's house, telephoned AUSA Gerzog and Agent Frank Grillo of the Federal Bureau of Investigation (FBI), and read the contents of the file to them over the phone. Agunbiade claims that recitation of the substance of this file alerted AUSA Gerzog and Agent Grillo to crucial trial strategy, particularly petitioner's plan to discredit the testimony of prosecution witnesses by utilizing entries in their passports to establish an alibi.

Agunbiade also claims, as he has several times before, that AUSA Gerzog improperly withheld the passport of a chief prosecution witness, Rakiyah Maissalla, in an attempt to conceal allegedly perjurious testimony and to prevent Agunbiade from attacking her credibility and establishing his alleged alibi. The Court expressly rejected this argument in its May 10, 1995 order denying Agunbiade's motion for a new trial on the basis of, *inter alia*, petitioner's failure to establish Maissalla's al-

---

1. In memorandum-decision and orders dated June 5, 1992, September 24, 1992, and May 10, 1995, this Court denied, *inter alia*, motions for a new trial filed under Rule 33 of the Federal Rules of Criminal Procedure. This Court also denied five separate petitions seeking relief pursuant to 28 U.S.C. § 2255 in orders dated November 12, 1991, January 7, 1992, March 1, 1992, March 11, 1992, and August 20, 1992, respectively.

# 162

leged perjury and AUSA Gerzog's purported suppression of the passport.[2]

This also is not the first occasion the Court has had to address Agunbiade's claim of official misconduct during the May 16, 1991 search of his home. The parties previously raised this issue during appearances before the Court on May 20, June 11, June 13, and June 20, 1991. At the June 11, 1991 status conference, AUSA Gerzog conceded that DEA agents in Detroit, Michigan had conducted a search of petitioner's residence pursuant to a warrant, and that during this search had uncovered and viewed material they believed to be privileged attorney-client material or attorney work-product. At a suppression hearing held on June 13, 1991, the government argued that the only privileged material witnessed by DEA agents was one letter from defense counsel to Agunbiade regarding his attorney's fee and a yellow legal pad containing handwritten notes of petitioner's defense strategy. The government urged that the DEA never actually seized these documents, but left them where they were found at petitioner's residence. Moreover, the government vehemently denied that the searching agents ever fully read the contents of the documents, or relayed any information contained therein to AUSA Gerzog, Agent Grillo, or any other law enforcement official. After hearing witness testimony, including that of FBI Agent Grillo and the DEA agents present during the search, the Court held that Agunbiade's attorney-client privilege had not been violated and denied his motion to suppress. The Second Circuit affirmed this decision on appeal. *See United States v. Osinowo*, No. 92–1590, 993 F.2d 1533 (2d Cir. April 22, 1993) (affirming Agunbiade's conviction and sentence).

In addition, on or about April 16, 1993, Agunbiade filed with the United States Department of Justice, Office of Professional Responsibility (OPR), a complaint alleging prosecutorial misconduct against AUSA Gerzog and other law enforcement officials based on the May 16, 1991 search and AUSA Gerzog's alleged suppression of Maissalla's passport. On November 19, 1993, Michael E. Shaheen, Jr., Counsel at OPR, wrote to Zachary Carter, the United States Attorney for the Eastern District of New York, seeking comment on petitioner's allegations. In response to OPR's request for comment, by letter dated December 7, 1993, William J. Muller, Executive Assistant United States Attorney, provided Mr. Shaheen with information regarding Agunbiade's claims. By letter dated January 3, 1994, Mr. Shaheen notified William Muller that OPR had reviewed petitioner's complaint and the information provided by the United States Attorney's Office, and had concluded that:

> In view of the fact that the issues raised by Dr. Agunbiade with our Office were raised by him previously with the district and appellate courts and were fully briefed and decided against him, we find no reason to inquire further into this matter. We are therefore closing our file.

Notwithstanding this decision, Agunbiade filed a complaint with the United States Attorney's Office restating the charges against AUSA Gerzog and other law enforcement officials in a document dated July 24, 1994, and entitled "Criminal Complaint." This complaint was forwarded by Mr. Muller to OPR on August 11, 1994. On the basis of the information previously submitted in connection with Agunbiade's original complaint, OPR determined that petitioner's renewed application warranted no further investigation. Petitioner now urges the Court to issue a writ of mandamus compelling OPR and the United States Attorney's Office to reopen their investigation into his charge of prosecutorial misconduct, and to issue criminal complaints against AUSA Gerzog and the law enforcement officials involved in the May 16, 1991 search of his residence.

## DISCUSSION

■ Section 1361 of Title 28 of the United States Code empowers the district courts to hear "any action in the nature of mandamus to compel an officer or employee of the Unit-

---

2. As noted in the May 10, 1995 order, the government already has provided Agunbiade and the Court with copies of Maissalla's passport and its contents when responding to one of petitioner's previous motions for a new trial.

ed States or any agency thereof to perform a duty owed to the plaintiff." The writ of mandamus is considered an extraordinary remedy to be invoked only in exceptional circumstances. *Kerr v. United States Dist. Court for the N. Dist. of California,* 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). Before a writ will issue, an applicant must demonstrate "(1) a clear right … to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). *Accord Anderson v. Bowen,* 881 F.2d 1, 5 (2d Cir.1989).

Petitioner claims that issuance of a writ is warranted because the government failed perform its obligations under 28 U.S.C. § 535. Section 535(a) provides in relevant part that the "Attorney General and the Federal Bureau of Investigation *may* investigate any violation of title 18 involving Government officers and employees." (Emphasis added.) Section 535(b) mandates that "[a]ny information, allegation, or complaint received in a department or agency of the executive branch of the Government relating to violations of title 18 involving Government officers and employees shall be expeditiously reported to the Attorney General by the head of the department or agency." Agunbiade claims that after reporting alleged misbehavior on the part of AUSA Gerzog and the searching DEA agents to OPR, both the United States Attorney's Office and the Department of Justice failed properly to fulfill their legal obligations under sections 535(a) and (b).

█ The Court lacks authority to grant petitioner the relief he seeks. First, section 535(a) "provides discretionary rather than mandatory authority to the Attorney General to investigate crimes by government officials and a writ of mandamus will not issue without a clear right to the relief sought." *McCabe v. Thornburgh,* 946 F.2d 1565 (D.C.Cir.1991). Thus, because the United States Attorney and Department of Justice owed no affirmative duty to petitioner to conduct an investigation, insofar as Agunbiade bases his claim on the government's failure adequately to investigate the charges of official misconduct, the motion is denied.

█ Section 535(b) also cannot justify the extraordinary relief sought here. Although that section does contain mandatory language requiring that complaints alleging violations of Title 18 on the part of government officials expeditiously be brought to the attention of the Attorney General, as noted by the government in its opposition to the instant application, William Muller brought Agunbiade's renewed complaint to the attention of OPR, the Attorney General's designee, within days of its receipt. (Petitioner filed the original complaint directly with OPR.) OPR carefully reviewed the charges contained in both complaints, found them to be without merit, and consequently closed the case. The Court agrees that the law required no further action on the part of either government agency.

*CONCLUSION*

The Court has considered carefully the merits of the petition, and for the reasons set forth above, the application for a writ of mandamus hereby is DENIED.

SO ORDERED.